**[J-15-2014] [MO: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

SEIU HEALTHCARE PENNSYLVANIA;   : No. 38 MAP 2013
MELANIE ZEIGLER; KATHERINE   :
BRODALA; JOANNE NAMEY; JON ANN   : Appeal from the order of the
FREDERICKS; WENDY HOKE; STATE   : Commonwealth Court at No. 150 M.D.
SENATOR TIMOTHY J. SOLOBAY;   : 2013 dated April 25, 2013.
STATE SENATOR JOHN N. WOZNIAK;   :
STATE REPRESENTATIVE MICHAEL K.   : ARGUED:  March 12, 2014
HANNA; STATE REPRESENTATIVE TED   :
HARHAI; STATE REPRESENTATIVE   :
PAM SNYDER,   :
  :
        Appellants   :
  :
       v.   :
  :
COMMONWEALTH OF PENNSYLVANIA;   :
THE HONORABLE THOMAS CORBETT,   :
GOVERNOR OF THE COMMONWEALTH   :
OF  PENNSYLVANIA; THE   :
PENNSYLVANIA DEPARTMENT OF   :
HEALTH; MICHAEL WOLF, SECRETARY   :
OF HEALTH,   :
  :
        Appellees   :
  :
AMERICAN FEDERATION OF STATE,   :
COUNTY, AND MUNICIPAL   :
EMPLOYEES, COUNCIL 13, AFL-CIO, BY   :
ITS TRUSTEE AD LITEM, DAVID R.   :
FILLMAN; KELLY LINKO,   :
  :
        Intervenors   :
  :
FEDERATION OF STATE CULTURAL   :
AND EDUCATIONAL PROFESSIONALS,   :
LOCAL 2382, AMERICAN FEDERATION   :
OF TEACHERS PENNSYLVANIA,   :
AFL-CIO, BY ITS TRUSTEE AD LITEM,   :
WILLIAM F. BERTRAND,   :
  :
        Intervenors   :

## DISSENTING OPINION

**MR. JUSTICE EAKIN**                    **DECIDED:** November 20, 2014

As I believe SEIU has failed to demonstrate a clear right to relief, I respectfully dissent.   Section 1403(c)(1) provides:

> With the exception of the three State health centers selected for the review program established in paragraph (2) [(expired)], the department shall operate those public State health centers and provide at a minimum those public health services in effect as of July 1, 1995.   Except as provided in paragraph (2) [(expired)], the department shall not enter into contracts with any additional private providers that would result in the elimination of any State health center nor reduce the scope of services currently provided nor reduce the number of centers.

71 P.S. § 1403(c)(1).   Clearly this statute speaks to two things: health <u>centers</u> and health <u>services</u>.   The two are not synonymous — the former is the location where the latter is provided.   The statute states it is the department that shall operate health centers — it shall not contract it away to a private provider; it also says the department shall provide the existing level of health services.   As the second sentence makes clear, what the statute precludes are contracts with private providers that would result in changing centers or services (again the two are separately enumerated); it does nothing to imply there cannot be changes in the centers by the department itself, so long as services are maintained.

That is, in addition to requiring the maintenance of service levels, what this section focuses on is the continued operation of health centers by the state, as opposed to private companies.   It does not say the department cannot close or modify a center — it says the department cannot do so by means of contracts with private providers.   It does not say

the department cannot substitute a mobile unit for a fixed location. It does not set a minimum number of buildings or employees that must be maintained — it says only that the department must provide the public health services available as of July 1, 1995. Clearly, this section was concerned with the preservation of available public health services, not the perpetual insulation of employees from the normal changes that every other employee faces. If the centers are sacrosanct, so are the landlords. But times change, and it cannot be that the legislature meant to lock the state into a series of locations in perpetuity. There will always be demographic shifts, lease expirations, building closures, employee furloughs and transfers, and the advances of technology and treatment options that make change inevitable. It would be absolutely silly to require the department to maintain exactly the same building as a center, forever tying the taxpayers' support to a location that has become an albatross. Why would the legislature demand such fealty to a "center" when its goal is service? The answer is that it did not do so — it required a level of service, not an immovable location, and precluded the state from abdicating responsibility by means of contract with private providers.

This reading is supported by various aspects of the statutory language. The first sentence addresses the department's obligations. It mandates the department continue its operation of state health centers except those covered by the privatization pilot program and maintain, at minimum, the current level of health services. The language is devoid of a specific number of centers that must be operated or language stating the specific number then in existence must be maintained. Moreover, given the exception of

three health centers yet to be selected for the privatization pilot program,[1] the legislature showed no intent to set a definitive number of health centers that the department must operate, nor did it require the department to operate centers within specific counties.   As a matter of fact, had the legislature intended to do so with this language, the magic number would be 57, not 60, and the continued presence of health centers in Dauphin, Butler, and Berks Counties would not be required.   The only portion of the sentence that sets a minimum standard concerns the public health <u>services</u> available, not the number, employment, or location of <u>centers</u> providing them.

The second sentence concerns actions from which the department must refrain, specifically, entering into additional contracts, aside from those employed in the privatization pilot program, with private providers that would result in reduction of the scope of services or number of centers then available.   Here we find the only reference to maintaining the number of health centers, and such is only protected from privatization measures.   The statute makes no mention of reducing the number of centers for other reasons.[2]   Compare this to the scope of public health services, which is protected from reduction both by a set minimum level in the first sentence and from privatization in the second.

---

[1] Expired paragraph (2) left it to the department to select the health centers, one center each from an urban, suburban, and rural area.   <u>Id.</u>, § 1403(c)(2) (expired pursuant to Act of July 2, 1996, P.L. 518, No. 87, § 4).   The health centers in Dauphin, Butler, and Berks Counties were selected and, following the expiration of the pilot program, were restored to public state health centers.

[2] Given that there are many potential justifications for the closure of state health centers, had the legislature intended to preclude closure <u>in toto</u>, it certainly would have employed broader language to attain this result.

Accordingly, I would affirm the preliminary injunction denial, finding SEIU is not clearly entitled to relief as the Commonwealth's proposed closures do not blatantly violate §1403(c)(1).